UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT EARL SAMUELS,<br><br>    Plaintiff,<br><br>  v.<br><br>G. ADAME, et al.,<br><br>    Defendants. | Case No. 1:09-cv-01320-AWI-DLB PC<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT FARNSWORTH'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND DEFENDANTS ADAME, GENTRY, MEDRANO, NICHOLAS, RIVERA, SAILER, AND SNYDER'S MOTION FOR SUMMARY JUDGMENT BE DENIED**<br><br>(ECF Nos. 44, 50)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

**Findings and Recommendations**

**I.    Background**

    **A.    Procedural History**

Plaintiff Robert Earl Samuels ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 This action is proceeding on Plaintiff's first amended complaint against Defendants G. Adame, P. Gentry, B. Medrano, R. Nicholas, F. Rivera, E. Sailer, and D. Snyder for excessive force, and against Defendant C. Farnsworth[1] for deliberate indifference to a serious medical need in violation of the Eighth Amendment.   Defendant Farnsworth filed a motion for summary judgment on February 6, 2012 and

---

[1] Defendant C. Farnsworth is also known as Farnsworth-Miller.

Defendants G. Adame, P. Gentry, B. Medrano, R. Nicholas, F. Rivera, E. Sailer, and D. Snyder filed a motion for summary judgment on February 27, 2012. ECF Nos. 44, 50.  On February 24, 2012 and March 9, 2012, Plaintiff filed his oppositions.  ECF Nos. 48, 49, 53.  On March 2, 2012 and March 23, 2012, Defendants filed their reply.  ECF Nos. 52, 54.

On August 1, 2012, Plaintiff was provided the opportunity to file an amended opposition to Defendant's motion for summary judgment.  ECF No. 61.  The Court provided this opportunity in light of the recent decision in *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).  Plaintiff must be provided with "fair notice" of the requirements for opposing a motion for summary judgment at the time the motion is brought, and the notice given in this case over a year prior does not suffice.  *Id.*  On August 2, 2012, Plaintiff filed his response.  ECF No. 62.  Plaintiff notified the Court that he will proceed with his currently filed oppositions.  Thus, the matter is submitted pursuant to Local Rule 230(l).

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

### III. Statement of Facts[2]

#### A. Defendants' Version[3]

At the time relevant to this case, Plaintiff was an inmate in the custody of the CDCR at the California Correctional Institution ("CCI") in Tehachapi, California. Ex. A, Crime/Incident Report, Log No. CCI-FA4A-07-10-0376, Lt. Matzen.  At all times relevant to this action, Defendants Nicholas, Snyder, Adame, Medrano, Rivera, Gentry, and Sailer were correctional officers at CCI. Am. Compl. at 2-3, ECF No. 15.

On October 15, 2007, Defendants Adame and Rivera were escorting Plaintiff, who was handcuffed, from his cell to the housing unit office when Plaintiff violently turned to his left, striking Defendant Adame in chest with his elbow, knocking Defendant Adame back a few steps, and causing Defendant Adame to lose his grasp on Plaintiff's arm.  Adame Decl. ¶¶ 2-3; Rivera Decl. ¶ 3; Ex. A, Crime/Incident Report, Part C- Staff Report, G. Adame; Crime/Incident Report, Part C- Staff Report, F. Rivera.  Defendant Rivera then shoved Plaintiff up against the wall in order to regain control of Plaintiff, but Plaintiff continued to twist his upper body in an aggressive manner. Rivera Decl. ¶ 3; Crime/Incident Report, Part C-Staff Report, F. Rivera.

Defendant Adame then sprayed Plaintiff in the face with pepper spray, and Plaintiff fell to his knees and then his stomach.  Adame Decl. ¶ 3; Crime/Incident Report, Part C-Staff Report, G. Adame.  When Plaintiff attempted to get up off the ground by bringing his knees to his chest, Defendant Adame pressed down on Plaintiff's shoulders and back to hold him down on the ground.

---

[2] Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(c), all disputes with the movant's statement of facts must be supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial"). Plaintiff cites to the statement of facts from his amended complaint. Pl.'s Opp'ns 49, 53. Plaintiff's amended complaint is verified under penalty of perjury and thus has the effect of an affidavit. "A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (quoting *McElyea v. Babbitt*, 833 F.3d 196, 197-98 & n.1 (9th Cir. 1987) (per curiam)), *amended by* 135 F.3d 1318 (9th Cir. 1998). Because Plaintiff's version of events and Defendants' version differ so greatly, both will be included.

[3] Facts regarding Defendants Adame, Rivera, Snyder, Sailer, Medrano, Nicholas, and Gentry are taken from Defendants' motion for summary judgment, filed February 26, 2012.  ECF No. 50.  Facts regarding Defendant Farnsworth are taken from her motion for summary judgment filed February 6, 2012.  ECF No. 44.

1 | Adame Decl. ¶ 3; Crime/Incident Report, Part C-Staff Report, G. Adame.

2 |     Defendant Medrano responded to the scene, and when Plaintiff continued to resist and
3 | ignored orders to get on the ground, Defendant Medrano sprayed Plaintiff with pepper spray in the
4 | face and torso area. Medrano Decl. ¶ 2; Crime/Incident Report, Part C-Staff Report, B. Medrano.

5 |     Defendant Gentry responded to the scene, and when Plaintiff still continued to resist after
6 | being sprayed by Defendant Medrano, Defendant Gentry used a baton to strike Plaintiff in the upper
7 | right thigh area. Defendant Gentry then left the area and put on a gas mask. Medrano Decl. ¶ 2;
8 | Gentry Decl. ¶ 2; Crime/Incident Report, Part C-Staff Report, P. Gentry, B. Medrano.

9 |     Defendant Snyder then responded to the scene, and when Plaintiff still continued to resist
10 | Defendant Adame, Defendant Snyder sprayed Plaintiff with pepper spray in the face and torso area,
11 | causing Plaintiff to finally stop resisting. Snyder Decl ¶ 2; Crime/Incident Report, Part C-Staff
12 | Report, D. Snyder.

13 |     After Plaintiff had stopped resisting, he was escorted out of the housing unit by Defendants
14 | Sailer and Snyder to be decontaminated. Snyder Decl. ¶ 2; Sailer Decl. ¶ 2; Crime/Incident Report,
15 | Part C-Staff Report, E. Sailer, D. Snyder.  While Defendants Snyder and Sailer were escorting
16 | Plaintiff he slowed his pace, dragged his feet, and leaned his back into them. Snyder Decl. ¶ 2;
17 | Sailer Decl. ¶ 2; Nicholas Decl. ¶ 2; Crime/Incident Report, Part C-Staff Report, R. Nicholas, E.
18 | Sailer, D. Snyder.

19 |     When Defendants Sailer and Snyder had escorted Plaintiff into another building to be
20 | decontaminated, Plaintiff lunged into Defendant Snyder with his shoulder, knocking Defendant
21 | Snyder off balance. Snyder Decl. ¶ 2; Sailer Decl. ¶ 2; Nicholas Decl. ¶ 2; Crime/Incident Report,
22 | Part C-Staff Report, R. Nicholas, E. Sailer, D. Snyder.

23 |     When Defendant Snyder lost his balance from being struck by Plaintiff, he held onto
24 | Plaintiff's arm and pulled Plaintiff down to the ground. Snyder Decl. ¶ 2; Sailer Decl. ¶ 2;
25 | Crime/Incident Report, Part C-Staff Report, E. Sailer, D. Snyder. Defendant Sailer pushed Plaintiff
26 | up against the wall and onto the ground while Defendant Snyder pulled Plaintiff down. Sailer Decl. ¶
27 | 2; Crime/Incident Report, Part C-Staff Report, E. Sailer. When Plaintiff continued to resist and kick
28 | his legs, Defendant Nicholas responded and sprayed Plaintiff in the face with pepper spray, and then

placed leg restraints on Plaintiff's legs. Snyder Decl. ¶ 2; Sailer Decl. ¶ 2; Nicholas Decl. ¶ 2; Crime/Incident Report, Part C-Staff Report, R. Nicholas, E. Sailer, D. Snyder.

Plaintiff was decontaminated in cool water from the pepper spray by Defendants Nicholas and Sailer, and was placed in a holding cage. Snyder Decl. ¶ 2; Sailer Decl. ¶ 2; Nicholas Decl. ¶ 2; Crime/Incident Report, Part C-Staff Report, R. Nicholas, E. Sailer, D. Snyder.

Defendants Adame, Rivera, Medrano, Gentry, Nicholas, Snyder, and Sailer did not ever intend to cause Plaintiff any harm, but only used the force necessary to stop the threat to his and other officers' safety and security that they perceived through Plaintiff's actions. Adame Decl. ¶ 4; Rivera Decl. ¶ 3; Medrano Decl. ¶ 3; Gentry Decl. ¶ 3; Snyder Decl. ¶ 3; Sailer Decl. ¶ 3; Nicholas Decl. ¶ 3.

After Plaintiff was initially sprayed by Defendant Adame, he did not see any other Defendants do any of the acts alleged in the Amended Complaint, but based his facts on the reports written by the Defendants. Ex. B, Pl.'s Dep. 22:21-23, 26:9-16. The reports written by Defendants do not show that they used excessive force. Crime/Incident Report, Part C-Staff Report, R. Nicholas, E. Sailer, D. Snyder, G. Adame, R. Nicholas, B. Medrano.

Defendant Farnsworth-Miller was a nurse at CCI. Farnsworth Decl. ¶ 1. On October 15, 2007, force, including the use of pepper spray, was used against Plaintiff after he battered Defendants Adame and Snyder. Crime/Incident Report Part A1-Suppl., Lt. Matzen. After Plaintiff was decontaminated in cool water from the pepper spray, he was placed in a holding cage and examined by Defendant Farnsworth-Miller. Crime/Incident Report, Part C-Staff Report, E. Sailer; CDC 7219 Medical Report of Injury or Unusual Occurrence, C. Farnsworth, dated Oct. 15, 2007.

Defendant Farnsworth-Miller noted that Plaintiff's entire body was reddened and swollen from the pepper spray exposure. CDC 7219 Medical Report of Injury or Unusual Occurrence, C. Farnsworth; Farnsworth Decl. ¶ 3.[4] Defendant Farnsworth-Miller did not observe any injuries to Plaintiff that, in her medical opinion, needed immediate attention from a physician. Farnsworth Decl. ¶ 3. Plaintiff was seen by another nurse the following morning, October 16, 2007, who

---

[4] Plaintiff submits a supplemental report with regards to this incident, authored by Defendant Farnsworth on January 8, 2008. Pl.'s Opp'n, Ex. 3. In this report, Defendant Farnsworth contends that she did not actually see the redness and swollenness on Plaintiff's entire body because of his dark skin. Rather, she noted his entire body was reddened based on his statement of injury. She did see that Plaintiff's facial area was red, and his eyes were red and swollen.

advised Plaintiff to be patient because the effects of pepper spray should wear off in a couple of days. CDC 7362, Healthcare Services Request Form, submitted Oct. 15, 2007.

At no time did Defendant Farnsworth-Miller intentionally or knowingly cause Plaintiff any pain, suffering, injury, or harm. Farnsworth Decl. ¶ 4. At no time did Defendant Farnsworth-Miller delay, intentionally or unintentionally, necessary care or treatment for Plaintiff. *Id.* ¶ 5. At no time Defendant Farnsworth-Miller believe that Plaintiff required urgent or emergency care. *Id.* ¶ 6.

### B. Plaintiff's Version

On October 15, 2007, Plaintiff was escorted by Defendants Rivera and Adame from his cell to an interview room to discuss a hostile letter written by Plaintiff's cell mate. First Am. Compl. ¶¶ 1-2.[5] Defendants handcuffed Plaintiff, and during the escort started to jerk him causing pain in his wrists. *Id.* ¶ 3. Tower staff opened the section door leading to the rotunda, and upon entering, Defendant Adame started verbally threatening Plaintiff, asking if he wanted to be assaulted. *Id.* ¶ 4. Plaintiff replied that the officers would do what they want anyway. *Id.* Defendant Adame grabbed Plaintiff, slammed him against the wall, and repeatedly tried to smash his face. *Id.* ¶ 5. Defendant Rivera began kicking Plaintiff's feet and telling him to spread them. *Id.* ¶ 6. Suddenly, for no reason, Defendant Adame pulled out his pepper-spray, sprayed Plaintiff in his face, and yelled at him to stop resisting. *Id.* ¶ 7. Plaintiff was slammed to the ground, causing pain to his left eye. *Id.* ¶ 8. Plaintiff was then pounded with feet, fists, and batons, as other officers arrived and joined in. *Id.* Reports indicated that these other officers were Defendants Gentry, Medrano, and Nicholas. *Id.* Defendant Medrano used pepper spray, Gentry used a baton, Adame used his fist, and Nicholas was doing the kicking, which went on for a while, approximately 18 minutes. *Id.* ¶¶ 8, 9.

Defendant Snyder arrived during a break in the beating and Plaintiff received another beating. *Id.* ¶ 10. Defendant Snyder pepper-sprayed Plaintiff in the mouth and beat him. *Id.* Plaintiff was unable to run or hide. *Id.* Defendants Snyder and Sailer forcefully pulled Plaintiff up off the ground, yanking and jerking him, while yelling at him to stop resisting and hurry up. *Id.* ¶ 11. Defendants Snyder and Sailer took him into another building, where both officers slammed him into a wall. *Id.* Defendant Nicholas pepper-sprayed him while Defendants Snyder and Sailer

---

[5] All facts are taken from Plaintiff's First Amended Complaint, filed December 31, 2009. ECF No. 15. Allegations that are unnecessary to resolving the motion for summary judgment have been omitted.

jumped on his back and kneed him, causing more pain. *Id.* Plaintiff was handcuffed at his feet and hogtied by attaching his handcuffed hands behind his back to his feet. *Id.*

Plaintiff was dragged to a shower, where he was held under cold running water. *Id.* ¶ 13. Plaintiff was only under the shower for 30 to 45 seconds before he was removed. *Id.* Plaintiff was taken to a holding cage, where a nurse came in to see him. *Id.* ¶ 14. After an hour, Plaintiff was only able to open his right eye. *Id.* His left eye was closed, he had pepper spray burns all over his body, and he had wrist, arm, ankle and back pain. *Id.* He called for defendant nurse Farnsworth, who viewed Plaintiff from outside the holding cage. *Id.* Plaintiff told her of the attack and his condition, and his pain. *Id.* ¶ 35, 36. She refused to further examine Plaintiff or document his various ailments, and she refused to call a doctor. *Id.* Plaintiff did not receive any pain pills or an ice pack to deal with his pain. *Id.* ¶ 29.

**IV.     Analysis**

   **A.  Eighth Amendment – Excessive Force**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id.* (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

Defendants Adame, Sailer, Gentry, Medrano, Nicholas, Rivera, and Snyder contend that Plaintiff conceded that he gleaned the facts from Defendants' staff reports. Defs.' Mem. P. & A. 7:27-8:4. Based on the reports, Defendants contend, Plaintiff has failed to present a genuine dispute of material fact because the reports indicate that the use of force was reasonable, not excessive. *Id.* Plaintiff alleges in his verified complaint that he was beaten by Defendants. Plaintiff concedes in his deposition that he could not see who his alleged attackers were at the time of the incident because he was pepper-sprayed in the eyes by Defendant Adame. However, Plaintiff relies on Defendants' incident reports primarily to identify his alleged attackers. While Plaintiff may not be a percipient witness as to the identity of his alleged attackers at the time of the incident, circumstantial evidence exists which can lead a trier of fact to conclude that Plaintiff's Eighth Amendment rights were violated. Defendants Adame, Sailer, Gentry, Medrano, Nicholas, Rivera, and Snyder wrote incident reports in which they indicated that they used force on Plaintiff. Despite Defendants' version of events, a reasonable inference can be made that these Defendants allegedly used excessive force on Plaintiff, which would raise a genuine dispute of material fact. For example, in a case involving allegations of police misconduct and excessive force, the Ninth Circuit has held that

> a jury could well draw reasonable inferences from the circumstantial evidence presented that would support a verdict for the plaintiff. Nowhere in our cases have we held that police misconduct may be proved only through direct evidence. To the contrary, a jury's finding for a plaintiff in an excessive force case may unquestionably rest on inferences drawn from circumstantial evidence. For example, in *Rutherford v. Berkeley*, 780 F.2d 1444, 1448 (9th Cir.1986), we held that even though the plaintiff could not recall whether the three defendant officers were among the officers who had beaten him, because they were among the five or six officers who surrounded him while he was being attacked, a jury could reasonably find that they participated in the assault.[] Indeed, as is the case in the appeal before us, excessive force claims typically boil down to an evaluation of the various accounts of the same events. Thus, the circumstances surrounding those events may be critical to a jury's determination

of where the truth lies.

*Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002) (footnote omitted).  Defendants have admitted that they used force on Plaintiff.  Based on Plaintiff's verified complaint and other documentary evidence, construed in the light most favorable to Plaintiff as the non-moving party, there remains a genuine dispute of material fact as to whether Defendants' application of force was excessive in violation of the Eighth Amendment.  Accordingly, Defendants' motion for summary judgment should be denied as to this claim.

### B. Eighth Amendment – Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and citation omitted).   A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837.

"Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060.  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Based on the undisputed facts, construed in favor of Plaintiff as the non-moving party, there is a genuine dispute of material fact as to the objective prong.  Plaintiff declared that he had been pepper-sprayed and beaten by correctional officers, which would demonstrate a serious medical

need. *See Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (exposure to pepper spray is a serious medical need); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) ("A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain") (quotations omitted), *overruled on other grounds by WMX Techs., Inc., v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

There is also a genuine dispute of material fact with regards to the subjective prong. Defendant Farnsworth declares that she examined Plaintiff while he was in a holding cage following the use of force on October 15, 2007. She inquired about the circumstances, and Plaintiff replied, "no." She knew that he had been pepper sprayed because, based on his statements to her, his entire body was reddened and appeared swollen from exposure. Plaintiff contends that he had informed her that he was in pain and requested to see a doctor. Plaintiff submits a Supplemental Report from Defendant Farnsworth, in which she acknowledges that she was told by Plaintiff that he had redness all over his body. Pl.'s Opp'n, Ex. 3, ECF No. 48.

Defendant Farnsworth examined Plaintiff and in her medical opinion concluded that he did not require any further, immediate medical care. However, based on Plaintiff's verified complaint, Defendant Farnsworth was informed that he had pain all over his body, and that his body was reddened and swollen. There is no evidence presented that Defendant Farnsworth provided any treatment for Plaintiff's serious medical need of having been pepper sprayed and having pain all over his body. There is no evidence presented that Defendant Farnsworth had offered any sort of decontamination process for Plaintiff, or offered any sort of assistance regarding his pain. Thus, there is a genuine dispute of material fact as to whether Defendant Farnsworth knew of and disregarded Plaintiff's serious medical needs. *Farmer*, 511 U.S. at 837. Accordingly, Defendant Farnsworth is not entitled to judgment as a matter of law, and summary judgment should be denied as to Plaintiff's Eighth Amendment deliberate indifference claim.

### C.  Qualified Immunity

Defendants also contend they are entitled to qualified immunity. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). The other inquiry is whether the right was clearly established. *Saucier*, 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (citation omitted). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Court finds that Defendants are not entitled to qualified immunity. The facts taken in the light most favorable to Plaintiff indicate a violation of Plaintiff's rights under the Eighth Amendment, as stated above. Such rights were clearly established at the time of the incident. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (excessive force); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (deliberate indifference to a serious medical need).

## V.     Conclusion and Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant Farnsworth's motion for summary judgment, filed February 6, 2012, should be denied; and

2. Defendants Adame, Sailer, Gentry, Medrano, Nicholas, Rivera, and Snyder's motion for summary judgment, filed February 26, 2012, should be denied.

These Findings and Recommendations will be submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within **fourteen (14) days** after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 20, 2012**                        /s/ *Dennis L. Beck*
                                                                UNITED STATES MAGISTRATE JUDGE